STATE OF TEXAS ET AL V. LOUIS H. PINK, STATUTORY LIQUIDATOR OF THE NATIONAL SURETY COMPANY.

No. 7305. Decided February 22, 1939.
Rehearing overruled April 19, 1939.
(124 S. W., 2d Series, 981.)

84

*Wm. H. Flippen,* of Dallas, *Ben H. Powell, Powell, Wirtz, Rauhut, & Gideon,* and *Everett L. Looney,* all of Austin, for plaintiffs in error.

It was error for the Court of Civil Appeals not to dismiss this appeal because the record shows that neither Geo. S. Van Schaick, statutory liquidator of the National Surety Company, under appointment of the proper court in the State of New York, nor his successor in office, Louis H. Pink, had intervened in this cause or in any wise became a party hereto or sought to obtain permission to prosecute this appeal, therefore the party prosecuting this appeal by writ of error does not have

the capacity to so prosecute the same or any standing in the courts of Texas. Malone v. Johnson, 101 S. W. 503; Moseby v. Burrow, 52 Texas 396; Boothe v. Clark, 17 How. (U. S.) 322, 15 L. Ed. 164.

*White, Taylor & Gardner*, of Austin, for defendant in error.

The liquidator was the statutory successor to the defendant and entitled to assert the rights of the defendant in the Texas Courts as a matter of right. Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337; Clark v. Willard, 292 U. S. 112, 78 L. Ed. 1160, 54 Sup. Ct. 615; National Surety Co. v. Cobb, 66 Fed. (2d) 323.

MR. JUSTICE CRITZ delivered the opinion of the Court.

As sufficient for the purpose of this opinion we make the following statement of this case:

1. On April 29, 1933, National Surety Company, a New York corporation, with a permit to do business in Texas, was placed in the hands of George S. Van Schaick, New York Insurance Commissioner, by a court of competent jurisdiction in that State.

2. The order of the court above mentioned directed the New York Insurance Commissioner to take possession of the Surety Company and its property as statutory receiver or liquidator.

3. In making the above order the New York court adjudicated that the Surety Company was insolvent and that a receivership was necessary to wind up and liquidate its affairs.

4. Immediately upon being appointed receiver, as above indicated, the New York receiver requested the proper officers of the State of Texas to bring immediate proceedings in a proper court for the appointment of a receiver in this State in order to preserve the assets of such company in this State, and, generally speaking, to wind up and liquidate its affairs herein.

5. The Attorney General of Texas, acting in his official capacity, and also acting on behalf of the Board of Insurance Commissioners of this State, and in compliance with the request of the New York receiver, on April 29, 1933, filed suit in the District Court of Travis County, Texas, against National Surety Company. By his petition in the above cause the Attorney General sought the immediate appointment of a receiver for the purpose, generally speaking, of preserving and ad-

ministering the assets of the company located in this State and liquidating and winding up its affairs.

6. On the date just mentioned the Travis County District Court, by order duly entered, appointed Orville S. Carpenter, one of the plaintiffs in error here, as receiver for the above company and its assets located in this State. This order fixed the bond of the receiver and defined his duties. Also, by this order the District Court of Travis County appointed John W. Miller, also plaintiff in error here, as attorney to represent the above receiver in such proceeding, and, in a general way, defined the duties of such attorney. In this regard Miller was charged with the responsibility of acting as attorney for the receiver in the various matters arising out of the receivership.

7. On the day he was appointed Carpenter duly qualified, by giving the bond required by the order appointing him, and by taking oath as required by law. Also, we take it for granted that at such time Miller entered upon and began discharging his duties as attorney for such receiver.

8. After the happening of the above events, the Attorney General filed an amended petition, and the District Court entered a further order reaffirming the appointment of Carpenter as receiver, and redefining and further defining and enlarging his duties. Also, the court later entered another order appointing Miller as attorney for such receiver.

9. After qualifying as such receiver, Carpenter discharged the duties of his position until this receivership proceeding was finally determined and closed by final judgment of the district court, duly entered on December 24, 1934. Also, Miller acted as attorney for such receiver in all matters pertaining to such receivership from the time he was appointed until such final judgment. From the record before us, we have a right to conclude that both Miller and Carpenter discharged their duties competently and to the entire satisfaction of the appointing court and all other parties interested in any way in the receivership proceedings.

10. On July 27, 1933, while Carpenter was acting as receiver for the insurance company he made application to the district court for authority to enter into a contract with the New York receiver. The contract which Carpenter proposed to make, and which he did make, was attached to his motion. Omitting formal parts, it reads as follows:

"1. The Texas Receiver acting under suitable order of the Texas Court in conformity with the laws of the State of Texas shall take into his possession any property owned within the State of Texas belonging to the National Surety Company to which that company is entitled, including the securities constituting the special qualifying deposit and shall retain (except as to payment of expenses of the Texas Receiver, as hereinafter provided) and use all such assets to aid and assist the Rehabilitator in the carrying out of a plan or plans of conservation, reorganization or rehabilitation for the benefit of all creditors, should such plan or plans be feasible and be approved by the appropriate court in the States of New York and Texas. Notwithstanding the foregoing provisions all recoveries based on contracts or Reinsurance shall be made by Rehabilitator.

"2. All expenses incurred by the Texas Receiver, including expenses incurred in defending litigation, shall be paid from the assets coming into the possession of the Texas Receiver, upon proper order of the court in charge of the Texas proceeding.

"3. The balance of the assets in the possession of the Texas Receiver shall be held, after the deduction of expenses as set forth above, for the benefit of creditors of the National Surety Company upon the understanding and agreement that the Rehabilitator will recognize and give full effect to the right of Texas creditors to share in the assets of the National Surety Company wheresoever located ratably and on an equal basis with all other creditors of the National Surety Company of like class and standing wheresoever resident.

"4. Whenever the Rehabilitator or Liquidator as the case may be, shall certify to the Texas Receiver that he intends to make a final distribution to creditors, the Texas Receiver shall with the approval of the Texas court, transmit all of the assets in his possession after the deduction of the expenses of the Texas Receiver, to the Rehabilitator or Liquidator.

"5. For the purpose of protecting the interests of creditors domiciled in the State of Texas, the Texas Receiver shall promptly proceed to ascertain the proper liabilities of the National Surety Company to such creditors, and for that purpose he may in such manner and form as to him shall seem most appropriate receive written statements (in triplicate) of claims of such creditors. For the purposes of facilitating the investigation into the propriety and amount of liabilities of the National Surety Company so alleged to exist in the State of Texas, the Texas Receiver will promptly transmit a copy

of each statement of claim to the Rehabilitator, and the Rehabilitator shall, as soon as possible, furnish information that he may have available concerning such alleged claims. The Texas Receiver will in due course and upon the completion of his investigation certify to the Rehabilitator his findings and determination as to the propriety and amount of each of the alleged liabilities.

"6. It is agreed that if and when the court in charge of the New York proceeding shall direct that claims be received, all known creditors and the Texas Receiver shall be notified so that Texas creditors may have an opportunity to file in the New York proceeding in the manner prescribed and within the time limited by the New York court, and that as to claims filed in the prescribed manner and within the time limited, that the final determination of the court in charge of the Texas receivership as to such claims shall be deemed valid in the New York proceeding as though they had been duly determined by the New York court in charge of the New York proceeding, and that when distribution of the assets is ordered by the New York court, such distribution shall be made of all general assets, including the assets in the possession of the Texas Receiver which shall be transmitted to the Rehabilitator or Liquidator in New York, to such creditor who shall have properly filed and whose claims shall have been allowed by a court of competent jurisdiction regardless of residence of such claimants or the place wherein such claims arose, on an equal basis with all other creditors of the National Surety Company of like class and standing.

> "NATIONAL SURETY COMPANY
> "By GEORGE S. VAN SCHAICK, SUPERINTENDENT
> "OF INSURANCE, AS REHABILITATOR.
> "BY W. P. HABEL
> "Asst. Special Deputy Superintendent
> "ORVILLE S. CARPENTER
> "Texas Receiver."

11. The record shows that the above contract was duly authorized by the proper courts of both Texas and New York, was duly executed by the respective parties, and, for the purposes of this opinion, will be treated as a binding obligation.

12. Many proceedings were had and many orders entered in this receivership, both before and after the consummation of the above contract, and before the receivership was finally closed. We do not deem it necessary, or even practicable, to set such orders and proceedings out, or to even count them.

They are too numerous, and involve too many complicated affairs. It is here sufficient to say that the transcript of the proceedings in the district court comprises 1434 pages, and shows that this receivership proceeding was unusually complicated and the transactions involved unusually numerous. Also, a very large estate was involved, consisting of personal property and real estate.

13. On December 21, 1934, before the closing of this receivership, Carpenter, as receiver, and Miller, as attorney, filed in the district court their application for the court to fix their final compensations as receiver and attorney, respectively. This instrument is rather comprehensive and attempts to give the court the information proper and necessary to be considered in fixing such compensations.

14. On the date last above written the district court entered his order fixing the fees here contested. We reproduce this order in full. It is as follows:

"On this the 21st day of December, 1934, came on to be heard the joint application of the Receiver and the attorney for the Receiver appointed by the Court, for final compensation covering the respective services rendered by each of them, and, it appearing to the Court that an application to terminate this receivership has been filed by the Receiver herein in words and figures as follows:

" 'Comes now Orville S. Carpenter, Receiver herein, and having filed his financial statement as of December 15, 1934, reflecting the financial status of the estate, further respectfully suggests that now is an appropriate time for terminating this receivership. In this connection, Receiver represents that the affairs of the National Surety Company are now in liquidation by the Insurance Department in the State of New York, and that the Receiver has reduced to his possession all of the assets of the National Surety Company that he has been able to locate within this State, and he has entertained the filing and consideration of all of the claims of the creditors of the National Surety Company that have elected to file claims with him either by separate proofs or by intervention proceedings.

" 'Your Receiver will show that since his appointment he has reduced to his possession assets of the National Surety Company of the value of $657,403.14, representing cash, bonds, notes, miscellaneous salvage, unincumbered real estate, and rents, and has also reduced to his possession approximately 1,058 parcels of real estate situated within this State of the

probable market value of between four and five million dollars (mortgages thereon excepted), which has been administered by this Receiver under the various orders of the Court entered herein. Your Receiver would show that it will be for the best interest of the estate for same to be terminated and the assets remaining on hand to be transmitted and delivered to the liquidator of the National Surety Company in the state of New York, with the privilege on the part of any creditors in the State of Texas who have not heretofore filed their claims with this Receiver or who have not intervened herein, to file their claims with the liquidator of the National Surety Company in the State of New York.

" 'WHEREFORE, your Receiver respectfully prays that he be authorized to forthwith terminate this estate without prejudice to such litigation that may now be pending and which your Receiver will undertake to defend in the event the liquidator for the National Surety Company of New York desires for him to do so, and with the further authority on the part of this Receiver to transmit and to deliver to said liquidator all assets remaining in his hands at the final termination of this receivership, all without prejudice to the rights of the creditors of the National Surety Company to pursue their claims with the liquidator of the National Surety Company in New York.' "and,

"The Court being personally mindful of the nature, extent and value of the services rendered by said Receiver and by said Attorney in conducting the affairs of the estate, and being further fully advised by appropriate evidence of such services, and after taking into consideration the nature, extent, and value of the property involved, the complications and difficulties encountered, the time expended, the labor and skill, knowledge and experience devoted by the Receiver and said Attorney; the responsibilities assumed, and the amounts heretofore paid to them as compensation, and the results obtained, is of the opinion and so finds that the sum of $20,000.00 is fair and reasonable final compensation to be paid to the said Receiver, and that the sum of $20,000.00 is a fair and reasonable amount to be paid to the said Attorney for Receiver, as final compensation and the Receiver is hereby authorized and directed to pay to himself and to said Attorney the respective amounts above set forth as fair and reasonable final compensation for their services performed in the administration of this estate, from the assets now in Receiver's possession."

15. On the 24th day of December, 1934, Carpenter made application for authority to deliver the assets remaining in his

possession to the New York receiver or liquidator. We do not deem it necessary to further detail the contents of this instrument. On the day just mentioned the district court entered an order auhorizing the delivery by the Texas receiver to the New York receiver of all the assets mentioned in the above application. We assume that the authority granted was fully consummated and the assets fully delivered and accepted.

16. On the date just above mentioned the district court entered its final judgment in this receivership. By the terms of such judgment the receivership was closed and the receiver and the surety on his bond, each and both, finally discharged. This order was duly entered in response to the filing of the final report of the receiver.

17. After the entry of the order or final judgment closing this receivership, writ of error was perfected from the district court to the Court of Civil Appeals by National Surety Company, purporting to "act by George S. Van Schaick, Superintendent of Insurance of the State of New York, and statutory liquidator of the National Surety Company." The Court of Civil Appeals found the judgment of the lower court excessive as regards the fees or compensations of the receiver and his attorney in certain amounts, and on the refusal of Carpenter and Miller to file remittiturs reversed the judgment of the district court, and remanded the cause. 105 S. W. (2d) 265.

OPINION.

By this appeal the New York receiver and liquidator presented to the Court of Civil Appeals the contention that the fees and compensation allowed by the district court to the receiver and his attorney, respectively, were excessive. The Court of Civil Appeals sustained this contention, and, on failure of such receiver and attorney, respectively, to file remittuturs in the amounts suggested, reversed and remanded this cause to the district court. 105 S. W. (2d) 265. We here pause to remark that Louis H. Pink has succeeded to the office, powers, and duties, as regards this case, of George S. Van Schaick.

By proper assignment in this Court, Carpenter and Miller contend that the Court of Civil Appeals erred in not dismissing this appeal, because it was, and is, attempted to be prosecuted by one who has no authority or capacity under our laws so to do. In this connection, Carpenter and Miller contend that this record shows that neither George S. Van Schaick, New

York Insurance Commissioner, and statutory liquidator of this Surety Company under appointment of a New York court, nor Louis H. Pink, his successor in office and authority, intervened in this cause in the district court, or in anywise became a party hereto, actual or constructive, or sought or obtained permission from such court to prosecute this appeal by writ of error, or otherwise.

The contention that the New York receiver or liquidator was, and is, without authority or capacity to prosecute this appeal was properly presented to the Court of Civil Appeals by Carpenter and Miller, and by that court overruled. If we properly interpret the opinion of the Court of Civil Appeals on this question, it holds that the New York liquidator or receiver had, and has, capacity to prosecute this appeal because he was a party to this suit in the district court. This holding is based upon the further holding that the request of the New York receiver for the filing of this suit, the making of the above-described contract between the Texas and the New York receivers, the approval of the same by the two courts, the remission of the net proceeds of the Texas receivership by the Texas receiver to the New York receiver, and the acceptance of same by the last-named receiver, in law made the New York receiver a party litigant in the Texas district court. In support of this ruling the opinion in Lloyds Insurance Co. v. State (Civ. App. writ refused), 98 S. W. (2d) 259, is cited.

█ An examination of the opinion of the Court of Civil Appeals will reveal that it upheld the right of the New York receiver or liquidator to prosecute this appeal on the ground that the making of the contract between the two receivers, and its attendant circumstances, in law constituted him an actual party to this litigation. It is the general rule that one contracting with a receiver in fact contracts with the court, and thereby becomes a party to the receivership proceedings in so far as such contract and rights thereunder are concerned. 53 C. J., p. 157, Sec. 196, 23 R. C. L., p. 76, Sec. 82; Kneeland v. American Loan & Trust Co., 136 U. S. 89, 34 L. Ed. 379, 10 Sup. Ct. 950. We do not find it necessary to say just how far this rule should obtain in this State, where the common law rule that a receiver may not be sued in a court other than that which appointed him, without leave granted by the appointive court, has been abrogated by statute; but we do believe that the making of the contract, above set out, together with all its attendant circumstances, both before and after its consummation, made the New York receiver or liquidator a party, in fact and in law, to this suit. In this connection, we call especial

attention to the fact that this suit was instituted at the instance and request of the New York receiver or liquidator, and this appeal is predicated on the basic contention that the contract entered into between the two receivers, above set out, has been violated by the district court allowing unreasonable fees to the receiver and his attorney. We further call especial attention to the fact that the contract, among other things, obligates the Texas receiver to turn over to the New York receiver or liquidator the net assets of the Surety Company after the payment of the receivership expenses. This certainly contemplated that the receivership expenses should be reasonable, and any unreasonable fees allowed the receiver or his attorney would be violative thereof. Certainly that matter in this instance could not be litigated in any other court or any other action than this Court and this action.

There is another reason why the New York receiver or liquidator, who was and is the Commissioner of Insurance of that State, was, in law and in fact, a party to this suit in the district court, and therefore entitled to prosecute this appeal. Under the facts of this record such official was not a mere equity receiver deriving his rights and titles from the orders and decrees of the appointive court, and therefore without power to prosecute a suit in this State, but to the contrary such receiver was, by law, the statutory successor of this corporation, and was vested, by law, with the legal title to all of its properties for the purpose of winding up its affairs as statutory liquidator. In this connection, an examination of the petition filed by the State of Texas in the district court in the instant case will disclose that, among other things, it alleges that the Surety Company was a New York Corporation; that such company was hopelessly and notoriously insolvent; that a New York court of competent jurisdiction had so adjudged and decreed; that such New York court had entered an order transferring the affairs and properties of the Surety Company to the Insurance Commissioner of New York; that under the laws of New York such Insurance Commissioner was duly authorized and empowered to take title to the properties of the Surety Company for the purpose of winding up its affairs as statutory receiver or liquidator; that in pursuance of the authority vested in him by the laws of New York the New York receiver or liquidator, acting in his official capacity in behalf of the Surety Company, admitted the insolvency of such company, and so informed the Board of Insurance Commissioners of the State of Texas and the Attorney General of such State; and that the New York Insurance Commissioner had requested

the Texas Board of Insurance Commissioners and the Attorney General of Texas to bring this suit for the purpose of winding up the affairs of the Surety Company in this State. The record further shows that the district court heard and considered the above petition, was fully advised with reference to the things alleged therein, and found the allegations thereof to be true.

■■ We are aware of the general rule that an administrator appointed in one state cannot sue in another, and an ordinary equity receiver appointed by a State court has no extraterritorial powers (36 Tex. Jur., p. 291, Sec. 149; Relf v. Randle, 103 U. S. 222, 26 L. Ed. 337), but such rule cannot be applied here so as to deny the New York receiver or liquidator the right to appeal this case for the reason that, as already stated, the New York receiver or liquidator, who was a New York public official, did not derive his powers, authority, and title from the decrees of the appointive court, but from the laws of the state which created or chartered this corporation. This Surety Company was created by the laws of New York, and therefore all pertinent laws of that State became a part of its charter. When it came into this State, it brought its charter with it. Necessarily a corporation must act through agents, and since the State of New York created this corporation, it had the lawful right to say, by statute, who such agents should be. In this regard, that State had the right to say who such agents should be, both while this corporation was a solvent and going concern, and after it had been declared insolvent and was in process of liquidation. Likewise, the creative State had the right to define who should become the legal owner of this corporation's properties when it became insolvent and passed into the hands of the New York Insurance Commissioner for liquidation and the winding up of its affairs. For us to refuse to recognize the New York Insurance Commissioner as a party to this suit under the facts of this record would be to deny full faith and credit to the statutes and judicial decrees of the State of New York. Finally, and simply stated, we think that under the facts of this record the New York Insurance Commissioner was, in fact, this corporation itself for all purposes of winding up its affairs. He was, and is, the legal owner of all of its properties. It must therefore follow that he was a party to this suit in the district court, and had the right to appeal this case. Relf v. Rundle, 103 U. S., 222, 26 L. Ed. 337; Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749; Ann. Cas. 1913D; Clark v. Willard, 292 U. S. 112, 54 Sup. Ct. 615, 78 L. Ed. 1167.

■ Carpenter and Miller contend that the order of December 21, 1934, fixing their final compensation is a mere interlocutory order, and therefore not appealable. In this regard, the well-known rule that mere interlocutory orders are not appealable unless there is special statutory authority therefor is invoked. We are aware of this rule, but, in our opinion, it is not necessary for us to decide whether or not the above-mentioned order is merely interlocutory. By his application for writ of error filed in the district court the New York receiver or liquidator brought up for review the order under consideration, and also the final order of December 24, 1934, closing the receivership. Certainly the matter of the excessiveness of these fees or compensations was reviewable on appeal. If the order of December 21, 1934, was not appealable, then certainly the order of December 24, 1934, was. By their own application for writ of error to this Court Carpenter and Miller expressly state that both of the above-mentioned orders were appealed from.

■ Carpenter and Miller contend that this appeal should be dismissed because no exception was taken to the judgment of the district court, and no notice of appeal there given. This contention must be overruled. It is true that Article 2253, R. C. S. 1925, provides that notice of appeal must be given by the appellant, and, as a general rule, this statute is mandatory as regards the ordinary method of appeal commonly resorted to. But such statute has no application to an appeal by writ of error, which was the method followed here. 3 Tex. Jur., p. 286, Sec. 190.

■ Carpenter and Miller contend that the Court of Civil Appeals erred in attempting to pass on the reasonableness of the compensations allowed them because no statement of facts was brought up with the record. We think this record shows that there was no statement of facts to be brought up. Furthermore, as shown by the opinion of the Court of Civil Appeals, that court had before it the transcript of the entire record in this case, comprising more than 1400 typewritten pages. Certainly such record was some evidence for the Court of Civil Appeals to consider in passing on the reasonableness or excessiveness of the fees allowed the receiver and his attorney. The matter of excessiveness of judgment and sufficiency of evidence to support the same, where no rendition is attempted is, by law, within the exclusive and final jurisdiction of the Court of Civil Appeals. We therefore have no jurisdiction to review their action in this record.

The application contains other assignments, but under the

view we take of this case they all present matters over which the Court of Civil Appeals had final jurisdiction.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered February 22, 1939.

Rehearing overruled April 19, 1939.