G. C. NUNN, Receiver, Horace Smith, Fred Nemerovski and Harry Ballis, Appellants,

v.

Robert L. FELTINTON et al., Appellees.

No. 18771.

United States Court of Appeals Fifth Circuit.

Sept. 15, 1961.

Rehearing Denied Dec. 12, 1961.

Maurice R. Bullock, Fort Stockton, Tex., F. H. Pannill, Tom Sealy and Garland Casebier, Midland, Tex., Stubbeman, McRae, Sealy & Laughlin, Midland, Tex., of counsel, for appellants.

Pinkney Grissom, H. F. Thompson, Morris Harrell, Dallas, Tex., Thompson, Knight, Wright & Simmons, Dallas, Tex., of counsel, for appellees.

Before HUTCHESON, RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

On the merits the question is whether the district court correctly held that a valid sale of real properties located in Texas had been made by a statutory liquidator for an Illinois bank pursuant to a decree of an Illinois state court. Before reaching the merits, a question of the requisite diversity of citizenship to confer federal jurisdiction must first be decided. That question is whether a Receiver appointed by a Texas state court to administer such properties and assets of the Bank as remained at the time of dissolution was the exclusive representative of the former stockholders of the Bank to the extent that the joinder with the Receiver of three such stockholders, residents of Illinois, would not defeat federal jurisdiction.

The action was commenced by the appellants in the District Court of Pecos County, Texas, and was removed to the State District Court on the ground of diversity of citizenship.[1] The district court denied the plaintiffs' motion to remand. The plaintiffs were G. C. Nunn, Receiver, a resident of the State of Texas, acting under appointment of the State District Court in a different case; Horace Smith, a Texas resident; and three Illinois residents, Fred Nemerovski, Harry Ballis and Myrtle Ballis. The defendants were four Illinois residents and two New York residents. Thus, on the face of the pleadings residents of Illinois appeared as plaintiffs and as defendants, and there was not that complete diversity of citizenship requisite to federal jurisdiction.[2]

The action concerned nonparticipating royalty interests on the oil, gas and other minerals in and under described lands in Pecos County, Texas, and was in trespass to try title, to quiet title, for cancellation and removal of clouds on title, and for declaratory judgment. The nonparticipating royalty interests in suit had been owned by the West Side Trust & Savings Bank, an Illinois corporation, through whom all parties claim. The plaintiffs claim as successors in interest of the Bank on its dissolution.[3] The defendants claim that all of the assets of the Bank were disposed of before dissolution, and that through such disposition the defendants acquired title to the royalty interests.

Attached as an exhibit to the petition for removal was a copy of the order appointing Nunn as Receiver and of another order entered shortly after such appointment. The Receiver had been appointed at the instance of the individual

1. 28 U.S.C.A. § 1441(a), § 1332.

2. Strawbridge v. Curtiss, 1806, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435; Haynes v. Felder, 5 Cir., 1957, 239 F.2d 868.

3. See Peurifoy v. Wiebusch, 1938, 132 Tex. 36, 117 S.W.2d 773, 775; Vernon's Civil Statutes of Texas, Art. 1388.

parties plaintiff. That part of the order of appointment defining the Receiver's powers and duties provides that G. C. Nunn

"* * * be, and he is hereby, appointed Receiver of the property, rights, claims, causes of action, both real and personal, situated within the State of Texas, and particularly is appointed Receiver to take charge and control of and manage and control the right, title, interest, claim, demand, cause of action or other interest of the West Side Trust and Savings Bank of Chicago, and which it had at the time of its dissolution, and the interest of the stockholders or former stockholders, officers, agents or directors, or their successors, as well as the depositors and creditors of such bank and which remained vested in such bank at the time of its dissolution, in and to the following described real estate situated in Pecos County, Texas, to-wit:

* * * * * *

"* * * and that after qualifying as Receiver herein, he exercise all of the right, power, custody and control over such assets and property as may be conferred upon receivers by the statutes and rules of procedure of this State and the further Orders of this Honorable Court."

A week after appointing the Receiver, the Texas District Court approved a contract between the Receiver and Horace Smith, one of the plaintiffs, and certain attorneys, containing the following provisions:

"In consideration of such agreement and the services performed and to be performed by such attorneys the undersigned Receiver agrees that he will, out of any property, assets, demands, claims, causes of action or other interests which may be discovered or reduced to possession and title established in the Receiver or the Receivership estate, transfer, assign, grant, sell and convey unto said attorneys an undivided ¼ interest. * * *

"G. C. Nunn, Receiver, in consideration of the obligation herein set out to be performed by Horace Smith agrees that he will, out of any property, assets, demands, claims, causes of action or other interests which may be discovered or reduced to possession and title established in the Receiver or the Receivership estate, transfer, assign, grant, sell, and convey unto said Horace Smith an undivided ¼ interest. * * *

* * * * * *

"This agreement and any transfer, assignments, conveyances, deed or other instrument presumptive hereto shall be binding on all stockholders, depositors, creditors, and other persons having an interest in such property and is assigned free and clear of all liens, claims and encumbrances with full warranty of title in so far as the Receiver is permitted by law to warrant title.

"Any legal action that may be instituted shall be in the name of the Receiver * * *."

The pertinent Texas statutes relating to the appointment power and authority of the Receiver are Articles 2293, subd. 3, 2297 and 2310, Vernon's Ann.Rev.Civ. Stat. of Texas:

"Art. 2293. *Appointment*

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

* * * * * *

"3. In cases where a corporation is insolvent or in imminent danger of insolvency; or has been dissolved or has forfeited its corporate rights."

"Art. 2297. *Receiver's power*

"The receiver shall have power, under the control of the court, to bring and defend actions in his own name as receiver, to take charge and keep possession of the property, to receive rents, collect, compound for, compromise demands, make transfers, and generally to do such acts

respecting the property as the court may authorize."

"Art. 2310. *Suit by or against*

"When property within the limits of this State has been placed in the hands of a receiver who has taken charge of such property, such receiver may, in his official capacity, sue or be sued in any court of this State having jurisdiction of the cause of action, without leave of the court appointing him. If judgment is recovered against said receiver, the court shall order said judgment paid out of any funds in the hands of said receiver as such receiver."

The position of the defendants, sustained by the district court, is that the Receiver has capacity to sue for title and in so doing to represent shareholders, depositors and creditors of the Bank, and that it is the citizenship of the Receiver, and not that of those he represents, which determines jurisdiction.

The plaintiffs, on the other hand, insist that the appointment of the receiver did not divest the shareholders of title to the property, nor vest it in the Receiver, and that the shareholders have the right to sue for title to the property subject to the Receiver's right of possession.

 It has been established from an early date that the joinder of formal or unnecessary parties cannot prevent the removal of an action to a federal court.[4] As the cases just cited show, the right of removal depends upon the case disclosed by the pleadings when the petition for removal is filed, subject to the right of the defendant in its petition to show that parties joined by the plaintiff are not necessary parties.[5] It is also well established "* * * that representatives may stand upon their own citizenship in the federal courts irrespectively of the citizenship of the persons whom they represent,—such as executors, administrators, guardians, trustees, receivers, etc." City of New Orleans v. Gaines' Administrator, 1891, 138 U.S. 595, 606, 11 S.Ct. 428, 431, 34 L.Ed. 1102. See also Mexican Central Ry. Co. v. Eckman, 1903, 187 U.S. 429, 433, 434, 23 S.Ct. 211, 47 L.Ed. 245; Fallat v. Gouran, 3 Cir., 1955, 220 F.2d 325, 326, 327.

The question in this case depends upon the extent of the capacity of the Receiver, under the laws of Texas, to represent the stockholders, including the three Illinois residents who were joined with the Receiver as plaintiffs. The basis and theory upon which they were joined is thus alleged in the complaint:

"The Plaintiff G. C. Nunn has the right to the possession, control, income, rents and revenues from the above lands and interests in his capacity as receiver under order and appointment of this Honorable Court in Cause No. 2458 pending on the docket of this Court to which reference is made. The Plaintiff Horace Smith is the owner of an undivided interest in the fee simple title to the above lands and interests by purchase and transfer from certain persons who are stockholders, or former stockholders, of the West Side Trust & Savings Bank in Chicago, Illinois, their heirs, successors and assigns. The Plaintiffs Fred Nemerovski, Harry Ballis and Myrtle Ballis were stockholders of the West Side Trust & Savings Bank in Chicago, Illinois, at the time it ceased doing business and at the time of its dissolution and are the owners of undivided interests in the above lands and property by virtue of having been such stockholders. The Plaintiffs Horace Smith, Fred Nemerovski, Harry Ballis and Myrtle Ballis are tenants in common and present this action

---

4. Barnery v. Latham, 1880, 103 U.S. 205, 213, 215, 26 L.Ed. 514; Salem Trust Co. v. Manufacturers Finance Co., 1924, 264 U.S. 182, 189, 44 S.Ct. 266, 68 L.Ed. 628; Lee v. Lehigh Valley Coal Co., 1925, 267 U.S. 542, 543, 45 S.Ct. 385, 69 L.Ed. 782.

5. Chesapeake & Ohio Ry. v. Cockrell, 1914, 232 U.S. 146, 152, 34 S.Ct. 278, 58 L.Ed. 544; Morris v. E. I. Du Pont De Nemours & Co., 8 Cir., 1934, 68 F.2d 788, 791; 45 Am.Jur., Removal of Causes, Sec. 136.

on behalf of themselves and all of their co-tenants against the Defendants who are not their co-tenants, but who are strangers to the title, for the purpose of recovering for and on behalf of themselves and their co-tenants the entire interest in the above property formerly held for or by West Side Trust & Savings Bank, a dissolved corporation, of Chicago, Illinois."

The plaintiffs rely strongly upon Abbey v. International & G. N. R .Co.'s Receivers, 1893, 5 Tex.Civ.App. 261, 23 S. W. 934,[6] wherein it was held that,

"The receivership did not invest the receivers with the title to the company's property. High, Rec. § 302. The court, by means of a receivership, assumed the control and management of its property for the purposes of the receivership, and had power, through appropriate proceedings, to divest the corporation of its title. The case is unlike an assignment made by an insolvent person or corporation, by which the title is expressly conveyed. There exists no such relation between the owner and the receiver which admits of a judgment in respect to the title to property against the latter being res judicata as to the former." 23 S.W. at page 935.

That holding was clearly based upon the extent of the authority of the particular receiver under the law and the decree of the court providing for his appointment. Such law and decree do not, however, appear in the brief report of the opinion. Nor does the case hold what this quotation out of context might imply. It holds that the owner is not bound by a judgment against a receiver where the suit was brought without leave of the receivership court having possession of the property in question unless the judgment is then pleaded in that court. The part quoted states that the receivership court may then divest the owner's

title. The case does not imply either that the receivership court cannot make a binding adjudication of the owner's title, or that it may not empower the receiver alone to obtain such a binding adjudication from another court. Other Texas receivers have been held to be actually vested with legal title to the properties in their possession. Smith v. Texas & N. O. R. Co., 1908, 101 Tex. 405, 108 S.W. 819, 821; Hovel v. Kaufman, Tex.Com.App. 1926, 280 S.W. 185, 187. As was said in Herf & Frerichs Chemical Co. v. Brewster, 1909, 54 Tex.Civ.App. 217, 117 S.W. 880, 882:

"The rights and duties conferred upon receivers of the property of an insolvent corporation and trustees in possession of the property of such a corporation under the appointment of a court of bankruptcy are largely the same. The title of the property of the insolvent corporation is vested in the receiver, or the trustee in bankruptcy, in trust for the benefit of the creditors, and it is his right and duty, when the interest of the creditors require, to compel by proper proceedings, the delinquent subscribers to pay the balance due on their unpaid stock, and with the fund thus acquired to discharge, as far as he may, the debts of the corporation. So long as the estate is being administered by the courts, the receiver or the trustee alone has the right to pursue the remedy provided by law for the collection of unpaid stock subscriptions. Commercial Bank v. Warthen, 119 Ga. 990, 47 S. E. [536], 537, and authorities cited."

See also, Cocke v. Wright, Tex.Civ.App. 1927, 299 S.W. 446, affirmed Tex.Com. App., 39 S.W.2d 590; Cox-Rushing Greer Co. v. Richardson, Tex.Civ.App.1925, 277 S.W. 718; Oatman v. Boone, Tex.Civ. App.1922, 244 S.W. 398. The principle to be deduced from the cases is that the capacity and authority of a receiver over the title to the properties in his posses-

6. The plaintiffs rely also upon 36 Tex.Jur. 180 and 26 Tex.Jur. 288, which in turn rely upon the cited case.

sion depend upon the statutes, laws and decrees which apply to the particular receivership.

■ The pertinent statutes and decrees governing the present receivership have already been set forth *in extenso*. From a mere reading of them it clearly appears that Nunn was a general receiver, vested not only with possession but with control of the title and authority to sue, representing, by order of the appointing court, the entire interest claimed by the shareholders and all rights of action in respect to it. We conclude that the three Illinois stockholders were mere formal or unnecessary parties, and that their joinder does not prevent the removal of the action nor defeat federal jurisdiction.

## II.

The date of the order appointing Nunn as Receiver was March 3, 1959. The Bank had been dissolved many years theretofore, by judgment of an Illinois court on February 1, 1935, which was repeated in the final judgment of November 30, 1948. The Bank had been organized as a corporation under the banking laws of Illinois in 1905. The mineral royalty interests in controversy were owned by the Bank under reservations made in six deeds executed between the years 1927 and 1933. The Bank itself did not convey the interests in controversy prior to its dissolution. The defendants deraign title through conveyances made by a statutory liquidator for the Bank pursuant to a decree of an Illinois state court. As has been stated, the plaintiffs claim that title remained in the Bank at its dissolution, and then passed by operation of Texas law to its stockholders.

The Auditor of Public Accounts of the State of Illinois caused an examination to be made of the affairs of the Bank as of the close of business on March 28, 1933. The examination disclosed this Bank's condition to be like that of so many other banks during that period. Its capital had become impaired and the impairment could not be made good. On account of that condition, the Auditor took possession of its assets on December 19, 1933, and retained control until January 12, 1934, at which time the Auditor found and determined that the Bank "cannot be reorganized and that the same should be liquidated through receivership." The Auditor appointed a receiver and authorized and directed the receiver "to take possession of, and for the purpose of such receivership the title to the books, records and assets of every description of said bank and to collect all debts, dues or claims belonging to it and to conserve the same for the benefit of the creditors of said bank." The Auditor was acting in conformity with the Illinois banking laws. Section 11, Chapter 16½, Smith & Hurd Illinois Statutes provides for the appointment by the Auditor of a receiver under such circumstances, and provides that:

> "Such receiver, under the direction of the Auditor, shall take possession of, and for the purpose of the receivership, the title to the books, records and assets of every description of such bank, and shall proceed to collect all debts, dues and claims belonging to it, and, upon the order of a court of record of the county in which said bank is located, may sell or compound all bad or doubtful debts, and on a like order may sell the real and personal property of such bank, on such terms as the court shall direct."

Three days after he had appointed a receiver pursuant to said statute, the Auditor filed a bill of complaint in the Superior Court of Cook County, Illinois, seeking the instructions and orders of that Court as to the liquidation and dissolution of the Bank. On February 1, 1935, the Court entered an order directing the Receiver to file an inventory of properties of the Bank coming into his possession or to his knowledge, and authorizing the Receiver to file proper petitions to sell real estate or personal property belonging to the Bank, and to complete all acts necessary to its liquidation. In the order the Court found that the

Receiver had already taken possession of the title to all of the assets of the Bank of every description, pursuant to the Auditor's order of appointment and under the direction of the Auditor. The Court's order of February 1, 1935 also undertook to terminate the corporate existence of the Bank.[7]

Several successor Receivers were appointed by the Auditor, the last of whom was John W. F. Smith, appointed October 1, 1945. On December 30, 1946, John W. F. Smith as Receiver filed a petition for permission to sell all the remaining assets of the Bank. The petition states that there may have been a number of property interests of which the Receiver had no knowledge and that he asks permission to sell all such unknown contingent interests. The petition was granted in every particular by the court, and February 4, 1947 was set as the date of sale. The sale was held and the contingent unknown interests were sold to the United Mercantile Agencies, Louisville, Kentucky. On February 21, 1947, the sale was approved by the court. A search of the records of the receivership by both parties does not reveal that the specific mineral rights here in question were ever sold as a known interest, or excepted from the final sale, leading, by a process of elimination, to the conclusion that these rights were among the unknown contingent interests alluded to by the Receiver in his petition for permission to sell. The order of approval empowered and directed the Receiver "to indorse, transfer, assign, quit claim, set over and deliver" the assets tendered for sale at the auction. In accordance with the order, Smith as Receiver made an assignment of interest to the United Mercantile Agencies on March 17, 1947, intended to cover the unknown contingent interests.[8]

On November 30, 1948, the court entered an order reciting that the Receiver had made lawful, proper, and appropriate disposition of all assets whatsoever belonging to the Bank, and that the affairs of the Bank had been fully liquidated under the direction and supervision of the Auditor, and that the Auditor had discharged the Receiver as evidenced by a Certificate of Discharge, of which a copy was attached to the court's order. The court took "judicial cognizance of the discharge" of the Receiver by the Auditor, terminated the jurisdiction of the court with reference to the receivership and again ordered that the Bank be dissolved.[9]

On August 25, 1949, United Mercantile Agencies undertook to transfer the unknown contingency interests to one R. L. Feltinton, defendant and appellee in this suit.[10]

7. "G. It is Further Ordered that the said defendant, the West Side-Trust and Savings Bank of Chicago, be and it is hereby dissolved and that its corporate existence be and the same is hereby terminated."

8. "Assignment of Interest.
"Know All Men By These Presents, That I, John W. F. Smith, Receiver of The West Side Trust and Savings Bank, in consideration of the sum of One and No/100ths Dollar ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged (sic), do hereby sell, assign, transfer, convey, quit claim, set over and deliver over unto United Mercantile Agencies, its successors and assigns, and to its own proper use and benefit, any and all other choses in action, liens, claims, judgments, rights, powers, privileges, titles, easements or interest in any and all other property, if any, real, person (sic) or mixed belonging

to The West Side Trust and Savings Bank of Chicago, or Receiver thereof, except: * * *."

9. "It Is Further Ordered, Adjudged and Decreed that the corporate entity of the West Side Trust & Savings Bank, an Illinois Corporation, be, and it is hereby dissolved and the charter of said West Side Trust & Savings Bank, an Illinois corporation, be, and it is hereby declared null and void and of no further force and effect whatsoever."

10. "General Assignment.
"Know All Men by these Presents, That United Mercantile Agencies, Incorporated, of Louisville, Kentucky, in consideration of Ten Dollars and other good and valuable consideration * * * to it paid before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have sold, assigned, transferred and set over, and by these presents

In 1952, Phillips Petroleum, a lessee of some of the rights here involved, traced the title so as to obtain a ratification of its lease. To this end, several additional instruments were made by the parties to the "unknown contingency interests" sales. The first new instrument was an assignment of interest by Smith as Receiver to the United Mercantile Agencies, which specifically conveyed the "oil, gas and other mineral rights reserved by L. H. Heymann, Trustee, in lands acquired by him under deed from Erling C. Martinson recorded in Book 47, page 474, Pecos County, Texas Deed Records * * *." This instrument was backdated to September 16, 1948, prior to the discharge of Smith as Receiver. A second instrument of assignment, which had been signed over by United Mercantile Agencies in blank in 1949 to R. L. Feltinton for the purpose of inserting the description of any "unknown contingency interests" which he uncovered, was also completed with the above description of mineral rights. These instruments, along with copies of the Illinois Receiver's sale proceedings, but excluding the March 17, 1947 assignment of interest from Smith as Receiver to United Mercantile Agencies (see footnote 8, supra), were filed for record in Pecos County, Texas.

In 1958 the appellant Horace Smith made an investigation of the present ownership of the interests here in question. He then bought up 21% of whatever interests the stockholders of the dissolved Bank might still have as a result of the liquidation and dissolution proceedings. In January 1959, he filed suit in Pecos County, Texas, seeking a determination of his interests and the appointment of a receiver for any remaining assets in Texas land of the now dissolved West Side Trust and Savings Bank. On March 3, 1959, G. C. Nunn was appointed Receiver.

At this point, the March 17, 1947 assignment of interest from Smith as Receiver to United Mercantile Agencies was filed for record in Pecos County. In April of 1959 the present suit was begun in the District Court of Pecos County, Texas, and removed by the defendants to the United States District Court for the Western District of Texas.

We have carefully considered each of the criticisms of the title claimed by the defendants through the sale made by the Illinois Receiver. We agree that the mineral royalty interests are "real property" under Texas decisions.[11] We further agree that if the Illinois Receiver derived all of his title and authority from the Illinois court, the plaintiffs might prevail, for, under Texas public policy as defined by its legislature, no court, other than a Texas court, has power to appoint a receiver of property situated in Texas.[12] The Illinois Receiver did not, however, rely simply upon the Illinois court for his title and authority.

The Bank was incorporated under the laws of Illinois. Subsequent to the enactment of Section 11 of the Illinois Banking Act, to which reference has been made, providing for the appointment of a receiver by the Auditor

---

do sell, assign, transfer and set over unto R. L. Felton (sic), of 220 South State Street, Chicago, Illinois, his executors, administrators and assigns, to his and their own proper use and benefit, all of the interest it acquired or could acquire as assignee of the Receiver of the West Side Trust & Savings Bank, under the contingency assignment covering any and all other choses in action, liens, claims and judgments, rights, privileges, titles, easements or interest in any and all other property belonging to West Side Trust & Savings Bank or the Receiver thereof not shown on sale notice."

11. Hager v. Stakes, 1927, 116 Tex. 453, 294 S.W. 835; Sheffield v. Hogg, 1935, 124 Tex. 290, 80 S.W.2d 741; Japhet v. McRae, Tex.Com.App.1925, 276 S.W. 669; Caruthers v. Leonard, Tex.Com.App.1923, 254 S.W. 779.

12. "When a person resides in this State and a receiver is applied for, or if the property sought to be placed in the hands of a receiver is situated within the limits of this State, no court other than one within the limits of this State, shall have power to appoint any receiver of said property." Art. 2313, 7 Tex.Civ.Stat.

when the capital of the Bank has become impaired and the Auditor has determined that the Bank cannot be reorganized, this Bank's charter was amended to increase its capital stock. The Bank's charter was a contract between the Bank, its shareholders, and the State of Illinois; and the Illinois statutes became a part of that contract. Those statutes provided for the appointment by the Auditor of the receiver as statutory liquidator, and on his appointment, the receiver succeeded to the Bank's title to its assets of every description.[13] The Texas decisions recognize the distinction between statutory liquidation and equity receivership.[14] That Texas has no policy against transfer of title by the law of the state of incorporation to the liquidator of an insolvent or dissolved corporation is shown by Texas statutes making like provisions for Texas corporations.[15] It is not necessary to decide whether Article IV, Section 1 of the Constitution of the United States and Section 1738 of Title 28 United States Code, require that Texas courts give full faith and credit to the Illinois statute under which title was vested by the Auditor in the Illinois Receiver, for under a very recent decision of the Supreme Court of Texas it would seem clear that, since no established public policy of the State of Texas has been violated, the Texas courts would recognize the title of the Illinois Receiver upon the principles of comity. McElreath v. McElreath, Tex.1961, 345 S.W. 2d 722, 725.[16]

The description contained in the March 17, 1947, general assignment of interest by the Illinois Receiver to United Mercantile Agencies (see footnote 8, supra) was extremely general. The deposition of John W. F. Smith, the former Illinois Receiver, showed the description covered all of the assets of the Bank not known to the liquidating Receiver, and that he did not know of the royalty interests sued for. In Texas the description in a deed is not void for uncertainty unless, on its face, the description cannot be made certain by extrinsic evidence. 19 Tex.Jur.2d, Sec. 124, pp. 424, 425. Likewise, the description in the general assignment executed by United Mercantile Agencies, Inc., to R. L. Feltinton, defendant and appellee in this suit (see footnote 10, supra), could be made certain by extrinsic evidence. We do not find it necessary to pass upon the validity of the deed made by Smith as Receiver to the United Mercantile Agencies in 1952 and backdated to September 16, 1948. Nor is it necessary for us to rule upon Feltinton's authority to fill in a more specific description in the blank assignment delivered to him by United Mercantile Agencies.[17]

We conclude that all assets of the Bank were disposed of by the Illinois liquidating Receiver, and that the defendants-appellees deraign title through such disposition to the mineral royalty interests in suit. There being no substantial dispute as to the evidentiary facts, the question was properly decided by the district

13. Relfe v. Rundle, 1881, 103 U.S. 222, 26 L.Ed. 337; Keatley v. Furey, 1912, 226 U.S. 399, 33 S.Ct. 121, 57 L.Ed. 273; Clark v. Williard, 1934, 292 U.S. 112, 54 S.Ct. 615, 78 L.Ed. 1160.

14. State Board of Insurance v. Betts, 1958, 158 Tex. 83, 308 S.W.2d 846; Carpenter v. Pink, 1939, 133 Tex. 82, 124 S.W.2d 981.

15. See Articles 1388 and 489B, R.C.S.Tex.; Article 21.28 of the Texas Insurance Code, Acts 1951, 52nd Legislature, Ch. 491, V.A.T.S.

16. It is important to note that no rights of any Texas creditors of the Bank were asserted in this case. The only Texan shown to have any interest was the plaintiff Horace Smith, who in 1958 bought up supposed interests of the stockholders of the dissolved Bank in anticipation of this suit. Cf. Fischer v. American United Life Ins. Co., 1942, 314 U.S. 549, 555, 62 S.Ct. 380, 86 L.Ed. 444; Clark v. Willard, 1935, 294 U.S. 211, 214, 215, 55 S.Ct. 356, 79 L.Ed. 865.

17. That Feltinton probably did have such authority, see Glasscock v. Farmer's Royalty Holding Co., 5 Cir., 1945, 152 F.2d 537, 538, 539.

court on motions for summary judgment by denying the plaintiffs' motion and granting the defendants' motion. The judgment is

Affirmed.